Fifth case this morning, United States v. Stevenson Morning, Your Honor. Jerry Bischoff for the appellant. Bishop. And Mr. Alexis. All right, Mr. Bischoff, you may proceed. May it please the court, my name is Jerry Bischoff. I represent the appellant in this case. What we're doing here, Your Honor, is we're challenging one of the predicate offenses upon which his 15-year sentence was based. He was sentenced as an armed career criminal. I think really the reason that we're here comes back to the Illinois Department of Correction records. They're not very helpful. We know, we can tell from those records that Mr. Stevenson was admitted into the IDOC in March of 1994, when he picked up a UW by a felon case, 94 CR 1805. The judge who sentenced him to three years in that case ordered that sentence to run concurrent with an attempt murder from 1989. You said concurrent, Mr. Bischoff, you meant consecutive? No, I'll talk about the consecutive sentences. We're talking about the two cases that he entered the IDOC at the time he was discharged. He entered in March of 1994 on a UW and the attempt murder from 1989. And those were to run concurrently. He was subsequently discharged on March 15th of 1996. So the question is, was he discharged on just the UW alone? Or was he discharged on both those cases, the UW as well as the murder? And, and I'm going to, I'm going to take a step backward in a minute. But just to lay some background, that's why we're here, because we can't tell from the IDOC records, whether he was discharged on the UW alone, or whether possibly discharged on more than one case. And again, that brings us back to the records, the restoration of rights letter that he would have received. We know from the records that they're when you are discharged out, we can tell from the offender tracking system and the document that the government relied on the minimus and movement screen that he was discharged out on March 15th, 1996. The problem with those documents is they don't correlate to a particular crime. Doesn't say he discharged out on the UW doesn't say he discharged out on on both. And that's a problem with the OTS and the screen. The restoration rights letter is problematical because it doesn't identify which case he's receiving the letter on. And of course, as was discussed at length in Buckmeyer, we know that letter is a problem for a host of reasons. One is it doesn't inform the offender that although his principal civil rights have been restored, they can't own or possess a weapon. If you receive that letter, if it applies to the attempt murder in this case, then it can't be relied upon as a predicate offense under the Armed Career Criminal Act. Now, that's by way of background. So I want to just shift briefly to what happened here with Judge Tharpe. And he admitted during sentencing that these documents are not very clear, which is why he had to go through his own calculations to determine when that attempt murder sentence was complete in his mind. And what he did was he and one of the justices asked me about consecutive. And that's key here because that attempt murder case that under 89 CR 8636 back in 1989 was ordered to run consecutive to a drug case in 89 CR 8932. It was in effect a 10 year sentence. The mistake that Judge Tharpe sentences as concurrent instead of consecutive. And when he did the math and what he did was he considered the 226 days time considered served that he received on that attempt murder. He moved backwards from when the sentence would started. And then he calculated when the sentence for the attempt murder might have ended. He actually made a mistake because he picked the December 1st 1989 date instead of the 11 November 15th data on which he was actually sentenced. But that was only a few weeks. He concluded that when Mr Stevenson I'm sorry this is so confusing. There's a lot of math involved and it's hard to he paroled out in April April 17th of 1994. And you can see that in defendant exhibit C which is appendix 99 which indicates that he paroled out on April 17th excuse me 1995 excuse me. And again the problem is you can't tell what case he paroled out on. But Judge Tharpe Mr. Bischoff I'll I'll take you up on your making. You're not going to like me to hear. You're not going to like me saying it this way. But you can disagree. OK. The point that you're making strikes me is absolutely correct. You can't tell. But that's exactly the problem that Mr. Stevenson runs into here because he unfortunately bears the burden. So I is to try to prove that not only try to establish that Judge Tharpe's construction of all this or attempt to reconstruct it is erroneous. It's it reflects clear errors and that is alternative meaning Mr. Stevenson's alternative is the only sensible alternative construction unless he can get to that point. I don't I don't see how he can carry his burden. And I say that recognizing how unfortunate this situation is that nobody can come up with an answer to a question that you would think we could answer. Well I think we can answer. And I think that we have met our burden by a preponderance of the evidence. And this is I'm glad you asked that question and framed it the way you did. It's going to make it a little easier for me. I was trying to wind my way to that point. The judge Judge Tharpe's calculation was wrong and he admitted in essence he admitted that this was a consecutive sentence not a concurrent sentence. So whatever calculation he arrived at is wrong. But here's what you can't tell. You do have to go back and kind of recreate the sentence because the jail they don't maintain their master files. So you kind of have to figure out what would typically regularly happen. Maybe it's the presumption of regular regularity that we can apply here as well. What should have happened? His sentence for the attempt murder should not have started running until his sentences for your sentence for the drug case was complete. Mr. Bishop, I don't know if you can hear me, but you're not coming through. Oh no. Can you hear me now? Yes. Okay. I'm going to speak a little. Maybe I'm too loud. I'm going to speak a little slower. I've calculated that the four year sentence that he was serving on his drug case under 89 CR 8932 would have been complete on March 6th, 1993, taking into consideration 152 days he had time considered. So there's a premise. There's a premise there that's important. How do you know when he receives consecutive sentences for the 1989 offense offenses, plural, the drug offense and the attempted murder? How do we know? Or how do we answer which sentence he started serving first? We can answer that because when he picked up the U. W. Case, the judge in that case ordered that he served his three year sentence on W. Concurrent with the attempt murder. So you know that he had to serve his his drug case first and note this. It's important. His drug case sentence was up in on March 6th, 1993. He violated his parole after that was already complete. And that's one of the things about the O. T. S. Which is wrong. You could read it as saying he when he was, uh, paroled out on April 17th, 1995. If you look at the mid sentence information, it would seem to indicate he was paroled out on or at least discharged out. Anyway, you want to put it on three cases when two of those cases sentences were complete years. So that's that's why you say that. That's why you worded the way you did, where you said Judge Tharp is wrong. And the reason Judge Tharp is wrong, in your view, is because of what the state court judge said at the time he was paroled out on the on the state gun charge. Exactly. And, you know, I don't want to speak anecdotally. You know, having done enough state work in my life, I know how these things work, and I know how these sentences work and how they should work. Now, assuming I'm right, maybe I'm wrong, but assuming I'm right, his attempt murder sentence that he was running that was running concurrent with the U. W. Case the maximum it would have expired. In other words, on in June of 1998 and the concurrent U. W. Would have expired on March 15th of 1997. Both of those sentences running concurrent extended beyond the time that he just start discharged out on March 15th 1996. So again, I don't know why the jail let him out before his the expiration of his maximum sentence on either of those cases. But I think it's safe to presume that he did that. The jail did it on both cases rather than just one. It's more likely than not that it happened that way. No, I don't see record disputes this. I think I is it more likely that he was discharged out on both of those sentences? Is it? Is it follow from your argument, Mr Bischoff? Because you say those sentences would have expired past 96 that therefore both of them? Yes, sir. Both of them would have passed that day. So it's safe to assume that the jail may be earned credit. Good time. I don't, you know, without the master file, you can't be sure. But you could be sure that both sentences extended beyond the discharge date. And it's a fair assumption then that both sentences discharged out on the same day. And there's no document that contradict that. But what I can't say is that Judge Stark was wrong. He treated a consecutive sentence as concurrent, and that was clear. So I don't know if I have any time left if anything to reserve. But I think I should wrap it up about here. Yes, you should. Miss Alexis. Good morning, judges. May it please the court. This is Georgia Alex Ikes representing the United States. This court should infer Mr Stevenson's sentence. The government concedes that the IDOC records that everyone has wrestled over are clearly not a model of clarity. And yet, with the record before it, the district court correctly determined that the defendant was an armed career criminal where Mr Stevenson was unable to to meet his burden to establish by preponderance of the evidence that the IDOC had sent him a restoration of rights letter that related to either of his 1989 conviction. Miss Alex, your response to Mr Bischoff's point about a fair assumption that both of the U. W. And the other sentence expired after the discharge. And your honor, my response to that is to simply point the court to the defendant's middleness, which has a 4 17 1995 and April 17th 1995 discharge date for both the attempted murder and for the other 1989 conviction, his drug related conviction. So while I understand where Mr Bischoff is coming from, that logically a consecutive these two sentences that have been ordered to serve consecutively, one would expect that at least one of those sentences would have extended past April 17th 1995. And yet the records before us all indicate that the attempted murder conviction ended that Mr Stevenson was discharged from that sentence on April 17th 1995. We also know that he wasn't discharged from parole at that time. We know that because there's no discharge from a particular location in the herd affidavit, which is part of the record below made clear. And this was an undisputed affidavit that per IDOC records, if someone is going to be discharged from parole, there's going to be a notation of a particular location from which the inmate is discharged. Here. All we have is that 4 17 95 discharge date. No corresponding institution. Judge Tharp went through painstaking calculations where he calculated that, you know, that the days of that sentence for the attempted murder did add up to an expiration of April 17th 1995. So there could not have been a parole from that April from that attempted murder conviction. There could not have been a discharge from a particular location. And under those conditions, the unchallenged herd affidavit told the district court that a restoration of rights letter simply would not have been issued. Do you think Judge Tharp misunderstood in any way that the 1989 convictions resulted in consecutive sentences? I don't judge. I don't think that Judge Tharp misunderstood that. That question clearly came up at the sentencing hearing. I believe Judge Tharp expressly acknowledged the argument. I think I think he conceded that the argument gave him quote a little pause were the words that he used. And yet he went on to explain that, based on his calculations, based on the record before it, he still believed that defendant had not met his burden in establishing that the letter that he would have received would have been sent in 1996 following his discharge would have only applied to the 1994 U. W. Offense and not to either of the 1989 conviction. Do you claim it sent out discharge letters? I'm sorry, Judge Keeney. You're you cut out a bit for me there. Corrections. You claim that the Department of sent those discharge letters. The government concedes that a discharge letter would have been sent to the defendant in 1996 in March of 1996. But it's the government's position that that letter would have only applied to his 1994 U. W. Offense and neither of the 1989 conviction. And I think that presumption fits both the facts of the case and also fits with the case law, where this court has held in a number of cases that restoration of rights letters the default assumption is that their case specific that their conviction specific Miss Alex jumping off on that idea of our case law. Obviously, this court went on bonk and Buckmeyer. We have Burnett. We have voice. One of the threads of the case law is the anti mouse trapping the interpretation of the unless clause in sub in subsection 20. Is it possible here to rule for the government but still be true to that anti mouse trapping rationale or the others? I think so. I think so, Judge. I think that the court has interpreted that clause to place the burden on the defendant on. I think, you know, typically I'm well familiar with how high the burden tends to be for the government, typically in criminal cases. But in this case, we're dealing with what this court has interpreted in light of the language of the statute as an affirmative defense. And so it's the defendant who bears the burden in this instance. And so in light of that case law, in light of the record and in particular, again, the fact that the documents before the district court clearly indicated that the defendant had discharged from his was discharged on 1989 convictions, the government maintains that the district court here did not clearly air in in making its finding that Mr Stevenson, um, qualified as an armed career criminal. Unless there are any further questions from the court, um, I simply ask that Mr Stevenson's sentence be affirmed. I have 11 quick question. It's not. It's quite unrelated. Um, and it's this. You don't have to know the answer, but I'm more curious. And maybe Mr Bischoff knows. Is Illinois still send these letters out today? Your Honor, I don't, um, I don't want to have a there's been an awful lot of resources that have been expended, and I completely understand why Mr Stevenson has pressed this point. But this all starts from the deficiency with these letters in this paperwork to begin with, and that's that's unfortunate for everybody, most especially Mr Stevenson. Judge, I don't I don't disagree with. I don't disagree with the comment that you made about the unfortunate situation that we're all in. Um, I will say that from a from conversations that I've had with colleagues, my understanding is that the situation has improved on that situations like this, like what Mr Stevenson is facing are exceedingly rare simply because we the process has changed. Um, and we're aging out of defendants with convictions that are this old. I think that's what I can say. Thank you. Mr Bischoff, did you want to say something? Mr Bischoff. Okay, I'm sorry. I went out there for a second. Um, just in answer to Justice's earlier question, they are still sending out the letter, but I would let you know that it's been vastly improved. Finally, uh, the one at issue was being set 92 to 2001 without being changed, and that's the time frame where we're there in response. Reply. I just want to say one thing. I just want to say what the district court said when I pointed out the consecutive nature of the sentence, he said. Now, all of that said, I think you make some interesting points about the concurrent consecutive nature of some of these sentences, and that gives me a little pause because, well, I acknowledge that they were consecutive sentences. I think that the coincident of the coincidence of that sentence being exactly a six year sentence on the discharge date is a very large coincidence, but it does highlight the fact that we don't know exactly what's happening in the brew there of how these three sentences actually got executed. This is a guy doing 15 years, uh, based on coincidence, and I have a real problem with that. So I hope the court will take a very close look at these arguments, how I believe these sentences really should have been carried out, and I'd ask that the court reverse and remand. Thank you, Mr Bush. Thank you, Mr Alexis. Thanks to both Council will take the case under advisement and remove